240 N.J. Super. 480 (1990)
573 A.2d 928
IN THE MATTER OF THE LIQUIDATION OF INTEGRITY INSURANCE COMPANY. KENNETH D. MERIN, COMMISSIONER OF INSURANCE OF THE STATE OF NEW JERSEY, AND HIS SUCCESSORS AS COMMISSIONERS OF INSURANCE OF THE STATE OF NEW JERSEY, IN HIS CAPACITY AS LIQUIDATOR OF INTEGRITY INSURANCE COMPANY, PLAINTIFF-RESPONDENT, AND CLARK EQUIPMENT COMPANY, A DELAWARE CORPORATION, INTERVENOR-PLAINTIFF,
v.
YEGEN HOLDINGS CORP., F/K/A YEGEN ASSOCIATES, INC., A NEW JERSEY CORPORATION, THE INTEGRITY FINANCIAL GROUP, INC. F/K/A THE INTEGRITY GROUP, INC., A NEW JERSEY CORPORATION, CHRISTIAN C. YEGEN, LAWRENCE E. STERN, EUGENE M. MCGEE, JR., IRWIN S. MARKOWITZ, CAROL LERER, JASON W. SEMEL, JOHN W. NOLAN, W. SHELLMAN MORSE, ROBERT W. STUBBS, ROBERT E. DENNIS, SAM L. MONK, JAMES P. MURPHY, BRIAN S. FRISCH, LAURA C. TALBOTT, RICHARD J. SVOBODA, HENRY C. SAVINO, BRADLEY D. WILEY, WILLIAM R. FISHER, JR., ALBERT L. WEISS, ARTHUR S. NICHOLAS, LEANDRO S. GALBAN, JR., MALLORY FACTOR, ROBERT J. LOCKHART, KENNETH R. MACLEOD, JOEL H. SCHLEIFSTEIN, AND TOUCHE ROSS & COMPANY, A NEW YORK PARTNERSHIP, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 18, 1990.
Decided March 6, 1990.
*484 Before Judges DREIER, SCALERA and WEFING.
John J. Francis, Jr., and Mark E. Davidson of the New York bar argued the cause for appellants Touche Ross & Company (Shanley and Fisher, attorneys, Shea and Gould of the New York bar, of counsel and with John J. Francis, on the brief).
*485 Stanley Weiss argued the cause for the remaining appellants (Carpenter, Bennett and Morrissey, attorneys, Stanley Weiss and Thomas J. Lennon, of counsel; LeBoeuf, Lamb, Leiby and MacRae, attorneys, Frederick B. Lacey and Thomas W. Greelish, of counsel; Greenbaum, Rowe, Smith, Ravin, Davis and Bergstein, attorneys, Paul A. Rowe, of counsel; Walter A. Lesnevich, attorney; Gern, Dunetz, Davison, Bortech and Weinstein, attorneys, Ronald L. Davison, of counsel.)
Steven S. Radin argued the cause for respondent Liquidator of Integrity Insurance Company (Sills, Cummis, Zuckerman, Radin, Tishman, Epstein and Gross, attorneys, Steven S. Radin of counsel, Davis J. Howard, Anthony J. Monaco and Shalom D. Stone on the brief).
An amicus curiae brief was filed by the intervenor-plaintiff Clark Equipment Company and by Burlington County, (Riker, Danzig, Scherer and Hyland, attorneys, Shawn L. Kelly, of counsel, Warren J. Martin, Jr., on the brief).
The opinion of the court was delivered by SCALERA, J.A.D.
This case involves the liquidation of Integrity Insurance Company (Integrity) in which the New Jersey Commissioner of Insurance was appointed as Liquidator (Liquidator) pursuant to the provisions of the New Jersey Insurers Liquidation Act (Act), N.J.S.A. 17:30C-1 et seq. In this opinion, we undertake to set forth the extent to which the Liquidator may act in that capacity and to establish the procedures which are to be followed whenever he asserts claims of the insolvent estate and other claimants against third parties.
On December 30, 1986, the Commissioner commenced rehabilitation delinquency proceedings against Integrity pursuant to the Act, N.J.S.A. 17:30C-6, and a consent order was entered. On March 24, 1987, however, the trial court terminated that proceeding (N.J.S.A. 17:30C-7), declared Integrity to be insolvent and directed the Commissioner, as statutory Liquidator, to *486 dissolve the company in accordance with the Act. (This is referred to herein as the so-called "liquidation order"). N.J.S.A. 17:30C-9 and 10.
Paragraph 16(i) of that liquidation order provided that the Liquidator was empowered to
prosecute any action which may exist on behalf of the creditors, policyholders or shareholders of Integrity against any officer or director of Integrity, or any other person.
The trial court thereby sought to grant to the Liquidator all of the express and implied statutory powers delineated in the Act, including the authority to commence litigation on behalf of Integrity, its creditors, policyholders, claimants and other beneficiaries of the estate.
In addition, the order provided that the Liquidator had to give notice of the entry thereof to all potential claimants, including policyholders, state insurance commissioners, guaranty associations and insurance agents and to specify the procedure by which they could file proofs of claim against the estate of Integrity. N.J.S.A. 17:30C-9a and 20. In response thereto, the Liquidator received over 25,000 proofs of claim from policyholders and creditors. Thereafter, although the Act did not require him to do so, the Liquidator secured a further order allowing him to provide all interested parties with the right to request and receive notice of future proceedings. Approximately 400 policyholders responded to that notification and their names were placed on a separate list.
On April 28, 1988, 18 of those policyholders, led by Clark Equipment Company (Clark), moved to have the trial court appoint a policyholders' committee to represent all policyholders in the liquidation process and asked that it be financed from the Integrity estate. On September 22, 1988, the trial court denied that application for the reasons set forth in its published opinion. In re Liquidation of Integrity Ins., 231 N.J. Super. 152, 159, 555 A.2d 50 (Ch.Div. 1988). In essence, the denial was grounded on the provisions of the Act which enabled the court to fashion "such ... relief as the nature of the case and *487 interests of the policyholders, creditors, stockholders, members, subscribers or the public may require" as provided in N.J.S.A. 17:30C-4d. Liquidation of Integrity Ins. Co., 231 N.J. Super. at 156, 555 A.2d 50. While Clark did not seek to appeal from that denial, the issue of its intervention is, nevertheless, implicated in our discussion. We also note that no one questions the trial court's appointment of the Liquidator or the general procedure attendant upon such action, except as may be specifically noted herein.
Meanwhile, on May 4, 1988, the Liquidator commenced the instant collateral suit in this action on behalf of Integrity, its creditors, policyholders, claimants and beneficiaries to recover damages from Touche Ross & Company (Touche) as Integrity's accountant and auditor, the Integrity Financial Group, Inc. as public owner of 100% of Integrity's stock, Yegen Holding Corporation as private owner of 80% of the Integrity Financial Group, Inc.'s stock (Yegen defendants), and 25 individuals who, at various times, had been associated with Integrity as directors and officers (D & O defendants.)
The complaint asserted various causes of action against the Yegen defendants for common law negligence, negligent misrepresentation, breach of fiduciary duties, common law fraud, waste, depletion and diversion of Integrity's corporate assets, violation of N.J.S.A. 17:27A-4(c) and N.J.S.A. 2C:41-1 et seq.; against the D & O defendants for violation of N.J.S.A. 14A:6-14 and N.J.S.A. 14A:7-14; and against Touche for breach of contract, malpractice, negligence, negligent misrepresentation, gross negligence, and recklessness. The amended complaint further charged Touche with fraud and aiding and abetting the misconduct of its codefendants. Both Touche and the Yegen defendants were also charged with violating New Jersey's anti-racketeering and consumer fraud statutes, N.J.S.A. 2C:41-1 et seq., and N.J.S.A. 56:8-1 et seq.
The essence of the allegations set forth in the pleadings was,

*488 that as a result of mismanagement and fraud, the Yegen Defendants caused Integrity to become statutorily insolvent in 1981 or 1982 and then, with the active participation of Touche, concealed the company's true economic condition by preparing and disseminating materially false financial statements. But for such concealment, New Jersey's Insurance Department ... would have shut down the company in 1982 or 1983 instead of 1987; policyholders would not have purchased insurance from Integrity during these years; and, creditors would not have extended credit to Integrity during these years without obtaining adequate security.
Although most of the asserted causes of action concededly "belong" to Integrity, two of the counts of the complaint seek a recovery based on alleged misrepresentations made by defendants to the creditors, policyholders, and other Integrity beneficiaries. The Liquidator premises his authority and standing to assert such claims on the provisions of the Act and paragraph 16(i) of the liquidation order.
On October 31, 1988, the defendants moved to dismiss these two counts on the ground that the Liquidator lacked standing to prosecute these claims because they "belonged" personally to the policyholders, creditors, and other parties who allegedly relied upon the misrepresentations. On April 10, 1989, the trial court denied these motions, but refused to address at that time, whether any recovery by the Liquidator in this action would constitute a general asset of the estate or pass directly to "some creditor, policyholder or claimant."
On March 17, 1989, Clark moved to intervene in this action and suggested in its brief to the trial court the appropriateness of proceeding with a class action. It noted that, in the absence of such, the defendants might justifiably complain that a determination by the court might not be binding or have res judicata effect. On April 10, 1989, the trial court partially granted Clark leave to intervene for the purposes of "monitoring" the proceeding only and in order to receive notice of all steps taken in the action. He further granted Clark the opportunity to object to any proposed settlement by the Liquidator. However, Clark was denied any right to negotiate a settlement of the claim which it assertedly owned, to take discovery or otherwise *489 participate as a party-plaintiff. Again, the present appeal does not directly involve that determination insofar as no appeal was prosecuted by Clark therefrom. On May 19, 1989, the trial court entered a further order "memorializing" this decision and therein granted to the Liquidator, the "non-exclusive" right to assert claims on behalf of Integrity's creditors, policyholders, claimants, and other beneficiaries. (This order is referred to as the so-called "standing order").
Shortly thereafter, this court granted leave to both Touche and the other named defendants herein. We also directed the parties to specifically address on appeal, "the issues of whether the Chancery Division should be directed alternatively to determine whether a class action should be certified or other case management techniques utilized on behalf of all policyholders, and prosecuted by one other than the Liquidator." Clark was permitted to submit a brief as amicus curiae. Since the appeals by Touche and the other defendants involve identical issues we will dispose of both appeals in this one opinion.
The Uniform Insurers Liquidation Act (Uniform Act) was approved by the National Conference of Commissioners on Uniform State Laws in 1939. 13 Uniform Laws Annotated at 322. One of the announced purposes of promulgating such a uniform act was to eliminate the problems that arose because the assets of an insolvent insurance company were often located in different states which had a myriad of different applicable laws. Id. Thus, the provisions of the Uniform Act were designed specifically to reduce the problems encountered by out-of-state claimant creditors by allowing for the appointment of both domiciliary and ancillary receivers in the various states with whom they could file claims. Id. at 322-323; 43 Am. Jur.2d § 93 at 172-173. See also Zullo Lumber v. King Construction, 146 N.J. Super. 88, 368 A.2d 987 (Law Div. 1976). Thus, all of the difficulties previously encountered presumably could "easily be eliminated" by the passage of a uniform act by the several states. 13 Uniform Law Annotated, at 323; 19A Appleman, Insurance Law and Practice, § 10621, at 11.
*490 It is now well settled that the insurance business affects the public interest and is therefore subject to reasonable regulation, including liquidation proceedings of an insolvent carrier. Saffore v. Atlantic Casualty Ins. Co., 21 N.J. 300, 310, 121 A.2d 543 (1956); 19A Appleman, § 10621. In New Jersey, the passage of L. 1975, c. 113 § 1 et seq., N.J.S.A. 17:30C-1 et seq., incorporated essential provisions of the Uniform Act but contained some variations, omissions and additions. 13 Uniform Laws Annotated at 325. See N.J.S.A. 17:30C-23. Obedient to the spirit of the Uniform Act, however, our Act provides that it is to be interpreted so as to effectuate the purposes of the former unless specifically in conflict with our statutory provisions. N.J.S.A. 17:30C-23b.
Thus, our Act undertakes to statutorily regulate the rehabilitation and liquidation of insolvent insurance companies doing business in New Jersey by ratifying the major portions of the Uniform Act and also, by providing its own additional requirements. Section 17:30C-15 provides, in relevant part:
a.... The court shall direct the commissioner forthwith to take possession of the assets of the insurer and to administer the same under the orders of the court.
b. As domiciliary receiver, the commissioner shall be vested by operation of law with the title to all property, contracts, and rights of action, and all of the books and records of the insurer wherever located, as of the date of entry of the order directing him to rehabilitate or liquidate a domestic insurer and he shall have the right to recover the same and reduce the same to his possession.
Clearly, this statute vests the Commissioner, as Liquidator, with title to the rights of action belonging to Integrity but concededly does not specifically bestow him with the right to prosecute claims "on behalf" of, or belonging exclusively to, creditors, policyholders, and the like. However, unlike the Uniform Act, our Act goes on to mandate that the court is to fashion any relief which "may" be necessary to protect their interests, as well as that of "the public."
On the return of the order to show cause, the court shall either deny the application or grant the application together with such other relief as the nature of the case and the interests of the policyholders, creditors, stockholders, members, subscribers or the public may require. [N.J.S.A. 17:30C-4(d)].
*491 Thus, a supervising court is statutorily required to exercise a wide range of discretion in order to protect such interests. N.J.S.A. 17:30C-5. Any interpretation of both our Act and the Uniform Act must be influenced by the provisions which mandate that the broadest protection be afforded to the public and the various claimants and beneficiaries. Purdy v. Nationwide Mut. Ins. Co., 184 N.J. Super. 123, 445 A.2d 424 (App.Div. 1982). Cf. Benham v. Manufacturers & Wholesalers Indem., 685 P.2d 249 (Colo. App. 1984). Against this backdrop we undertake a review of the orders granted to the Liquidator herein from the inception of the liquidation proceeding. Appleman, § 10654, at 85-88.
The defendants in this case argue essentially that upholding the Liquidator's omnibus right to prosecute all claims, including claims which are not part of Integrity's estate assets, constitutes an unconstitutional deprivation of the property of affected creditors without due process of law. Cf. Appleman, § 10682, for a discussion of this area.
The weight of authority makes it clear that a statutory receiver, such as the Liquidator here, may prosecute claims on behalf of creditors and policyholders of the insolvent company in order to preserve its estate assets, but may not maintain a suit in such a representative capacity if it is strictly personal in nature, that is, if the cause of action belongs clearly to the individual creditor or policyholder. In Corcoran v. Frank B. Hall & Co., Inc., 149 A.D.2d 165, 545 N.Y.S.2d 278 (1 Dept. 1989), the court embraced this principle in holding that the superintendent of insurance, as liquidator of the insolvent insurance company, had exclusive standing to assert claims "on behalf" of the insurance company, its creditors and policyholders against third parties.
The facts of Corcoran are markedly similar to those in our case. There, the liquidator sued the company's managers, corporate affiliates and independent auditor on behalf of the company, its creditors and policyholders, asserting that the *492 defendants had improperly concealed the company's insolvency. The defendants moved to dismiss the action, contending that such liquidator lacked the capacity to sue because the New York liquidation statute restricted his power to sue only for the rights of action of the insolvent insurer and not those of its creditors. In holding that the liquidator had paramount and exclusive standing to assert such claims on behalf of such policyholders and creditors, the New York court acknowledged that public policy and judicial economy were considerations which had to be considered in reaching a decision. It reasoned that, since defendants' failure to disclose the insolvency had affected the assets of the company and therefore its estate, the causes of action set forth in the liquidator's complaint necessarily belonged to the insurance company.
since all of the [Liquidator's] claims belong to [the insurance company], whether or not [the Liquidator] would have exclusive standing to bring actions belonging to creditors [need not be reached because], the [Liquidator] would have exclusive standing to bring the action on behalf of [the insurance company] its policyholders and its creditors. [Id. 545 N.Y.S.2d at 284-85]
While the Corcoran decision does not address the precise question of whether a liquidator may assert claims actually "belonging" to creditors and policyholders, it stands as acceptable authority for the proposition that a liquidator has standing to prosecute claims "on behalf" of its creditors.
In a similar case, Cotten v. Republic National Bank of Dallas, 395 S.W.2d 930 (Tex.Civ.App. 1965), the court also dealt with the distinction between causes of action brought "on behalf of" creditors and policyholders and those "belonging" to such persons. In Cotten, the receiver of an insolvent insurance company instituted suit against a bank for fraud. The court determined that the receiver could sue the bank for the benefit of the creditors and policyholders but only to the extent that the cause of action sought to preserve or recover the assets of the insurance company. The court further concluded, however, that the receiver could not maintain a suit as a representative of any individual policyholder, creditor or stockholder who may assert that he was induced by the alleged misrepresentations of *493 the bank and consequently sustained damage individually because of the alleged misrepresentations.
In arriving at its conclusion, the court said:
Certainly a receiver for an insolvent insurance corporation ... has a right to maintain a suit which is necessary to preserve the corporation's assets and to recover assets of which the corporation has been wrongfully deprived through fraud. In such a suit the receiver may be said to sue as the representative of the corporation and its creditors, stockholders and policyholders, for they have an interest in the corporation's assets and upon liquidation they are entitled to a proper distribution of the assets.
But some actions for fraud are by their nature personal to each creditor, or each stockholder, or each policyholder, and the receiver may not then maintain a suit in his representative capacity for their joint benefit. In such case each claimant and he alone may bring and maintain the suit himself, for the action is personal, separate and several, not joint, and extends no further than the individual loss of each particular creditor who sues. For example, one who proves that he relied on false representations as to the corporation's financial condition and was thereby induced to extend credit to the corporation, or to purchase stock in it, or to take out an insurance policy with it, must in his own name maintain a separate suit for his damages against the person who uttered the fraudulent representations. The aggrieved party and he alone may maintain the suit. [Id., at 941].
Another case which relies upon this rather fine distinction is In re Western World Funding, Inc., 52 B.R. 743 (D.Bkrtcy. Nev. 1985). There it was held that a bankruptcy trustee may maintain an action on behalf of the creditors against officers and directors of the corporation.
The dividing line is whether the cause of action is one which is purely personal, in which no other claimant or creditor of the corporation has an interest, or whether the cause of action is one in favor of creditors in general.... Where the injury alleged is primarily to the corporation, and is an injury to the plaintiff creditor only insofar as it decreases the assets of the corporation to which he must look for satisfaction of his debt, then the suit is for a tort suffered by the corporation, and properly brought by the trustee; if there is a special damage to the creditor suing, not common to other creditors, then it is a personal creditor action which the trustee may not pursue. [Id. at 774-75.]
We choose to follow the rationale of the Corcoran and Cotten decisions to the extent that they establish that such a liquidator may prosecute a claim "on behalf of" its creditors and policyholders, provided that the objective of such a suit is to increase the assets of the estate of the insolvent insurance company to which the creditors and policyholders, as well as the *494 public, may look for satisfaction of their debt.[1] Such an approach is entirely consistent with the goals and purposes of our Act. Most importantly, the interest of "the public" is thereby protected.
The defendants argue that Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972) lends support to their position that the Liquidator lacks standing to prosecute any action which is brought on behalf of the creditors and policyholders of Integrity. In Caplin, the Supreme Court did hold that a bankruptcy trustee and a receiver in equity lack standing to prosecute claims of creditors against third parties stemming from an alleged misrepresentation about the financial condition of the bankrupt. It based this on the rationale that the trustee could not sue to collect money which was not owed to the estate but to the debenture holder groups which he claimed to represent.
However, we do not regard Caplin as controlling or persuasive in resolving the issue presented here. First, Caplin was concerned with the Federal Bankruptcy Act, which is not applicable to the present case. Cf. Sheeran v. Sitren, 168 N.J. Super. 402, 411, 403 A.2d 53 (Law Div. 1979). Second, the Court pointed out that there appeared to be a legislative intent against granting the trustee such standing, which is not present in our Act. Third, unlike the liquidator in the case at bar, the trustee in Caplin failed to assert that he was acting on behalf of the insolvent company. Fourth, the claim by the trustee in Caplin was an attempt to preserve the assets of the debtor for a specific group of creditors rather than an attempt to increase the assets of the estate for all interested persons. *495 Finally, the Western case, in explaining the reasoning of the Caplin doctrine, pointed out that if the trustee were to assert the claims of specific creditors, a conflict of interest would arise in any action which was direct and personal. It subsequently held that therefore when actions are prosecuted for the benefit of creditors in general, without regard to personal dealing, the trustee may maintain such a suit on behalf of creditors against third parties.
Moreover, as previously noted, other jurisdictions having statutes similar to our Act, have concluded that a liquidator of an insolvent insurance company may prosecute claims on behalf of creditors and policyholders where such actions are necessary to preserve the company's assets for distribution. However, we agree that conversely, a liquidator may not maintain a suit in such a representative capacity if the cause of action truly belongs to the individual creditor or policyholder, that is, if it is personal in nature and any recovery thereon will not redound to the benefit of Integrity's estate.
Thus, the issue here necessarily turns on whether the Liquidator is suing to increase Integrity's assets, so that all of its policyholders, creditors, etc., may benefit thereby or whether the Liquidator is simply asserting personal claims which really belong to the individual creditors, policyholders and the like. N.J.S.A. 17:30C-4a.
The liquidation order allows the Liquidator:
(i) to prosecute any action which may exist on behalf of the creditors, policyholders or shareholders of Integrity against any officer or director of Integrity, or any other person [emphasis supplied.]
The standing order provides:
ORDERED, that pursuant to the Uniform Insurer Liquidation Act as adopted in New Jersey and N.J.S.A. 17:30C-1 et seq., and pursuant to the order of liquidation dated March 24 and 25, 1987 in the above-captioned liquidation proceeding (the "Liquidation Order"), the Liquidator has non-exclusive standing to assert claims of known and unknown policyholders, creditors, claimants and other beneficiaries of Integrity Insurance Company. [Emphasis supplied.]
*496 While the liquidation order does include the language "on behalf of," the standing order does not. The authority extended in the latter is obscured further by the trial court's refusal to decide whether the proceeds of any recovery by the Liquidator in this suit would belong to the estate or pass directly to individual policyholders or creditors. The standing order, however, does allude to the "claims of" such persons and since it was entered "pursuant" to the liquidation order, we conclude that this language was meant to be synonymous with that in the liquidation order.
Consistent with that view, the Liquidator's complaint in issue here seeks relief "on behalf of" Integrity's creditors and policyholders because it focuses on the loss which has been sustained by Integrity and therefore its estate, rather than on any individual losses incurred by creditors and policyholders. As so construed, we accordingly limit all of the causes of action in this complaint to those which seek a recovery which will inure to and increase the assets of Integrity's estate rather than one asserting personal claims of creditors and policyholders. The trial court's labelling of the Liquidator's power as "non-exclusive" was therefore unnecessary and superfluous.
So there will be no misunderstanding, however, we reaffirm the principle that, to the extent that a creditor or policyholder of Integrity was personally harmed by the acts or omissions of any of the defendants, such a claimant would have the right to maintain a separate cause of action against these defendants in this or another jurisdiction. See Cotten, 395 S.W.2d 930 (Tex. Civ.App. 1965).
Defendants also contend that irrespective of whether the Liquidator in this case is lawfully prosecuting such actions on behalf of Integrity's policyholders and creditors, the court must ensure that any judgment in this suit be binding so as to bar any subsequent identical causes of action by the individuals who the Liquidator purports to represent herein. We readily recognize that the status of such potential plaintiffs in this case *497 may be unclear because they have not been joined in either a class action suit, (cf. R. 4:32-1 et seq.) or as traditional direct parties.
This is a legitimate concern. Accordingly, where the Liquidator undertakes to sue third parties, a court should be quick to identify and eliminate any causes of action which might have been mistakenly brought by the Liquidator to enforce a strictly personal claim. Then it should ensure, insofar as it can, that its adjudications in such a suit are binding on all persons properly represented by the Liquidator so as to preclude any future similar action brought against the named defendants in this or other jurisdictions.
It is axiomatic that only when a court has jurisdiction over all "adequately represented" parties with a "common interest" can it be certain that its judgment will bind parties in a future action. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 805, 808, 105 S.Ct. 2965, 2971, 2972, 86 L.Ed.2d 628 (1985). This kind of binding jurisdiction requires that a court provide the implicated parties with procedural due process protections. See id.; Hansberry v. Lee, 311 U.S. 32, 40-43, 61 S.Ct. 115, 117-19, 85 L.Ed. 22 (1940); see also N.J.S.A. Const. Art. 1, par. 1; Township of Montville v. Block 69, Lot 10, 74 N.J. 1, 17, 376 A.2d 909 (1977); State Dept. of Community Affairs Dept. v. Wertheimer, 177 N.J. Super. 595, 599, 427 A.2d 592 (App.Div. 1980). Accordingly, with these principles in mind, we will set forth herein the specific mechanisms by which we believe a trial court can best afford such due process protections in this type of liquidation proceeding.
We start with the recognition that, ordinarily, these types of statutory proceedings may not be governed by the many rules applicable to "any ordinary civil action." Caminetti v. Prudence Mut. Life Ins. Ass'n, 142 P.2d 41 (Ct. of App.Calif. 1943), subsq. opinion, 62 Cal. App.2d 945, 146 P.2d 15 (1944). Because the various Integrity policyholders, creditors and the like have not been certified in such a class action suit *498 these defendants would lack the procedural protections afforded by such a mechanism:
In this case we hold that a forum State may exercise jurisdiction over the claim of an absent class-action plaintiff, even though that plaintiff may not possess the minimum contacts with the forum which would support personal jurisdiction over a defendant. If the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection. The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, `reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' Mullane [v. Central Hoover Bank & Trust Co.], 339 U.S. [306], at 314-315, 70 S.Ct. [652], at 657 [94 L.Ed. 865]; cf. Eisen v. Carlisle & Jacqueline, 417 U.S. 156, 174-175, 94 S.Ct. 2140, 2151, 40 L.Ed.2d 732 (1974). The notice should describe the action and the plaintiffs' rights in it. Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an `opt out' or `request for exclusion' form to the court. Finally, the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members. Hansberry, 311 U.S. at 42-43, 45, 61 S.Ct., at 118-119, 120. [Phillips Petroleum Co. v. Shutts, 472 U.S. at 811-12, 105 S.Ct. at 2974.]
See R. 4:32 governing class actions in ordinary civil actions.
The Liquidator argues that "the need for proceeding as a class is obviated by the doctrine of virtual representation." The thrust of his argument is that the relationship between the Liquidator and interested claimants creates a "type of privity or `connection'" which "will bind [them] to the terms of any settlement or judgment," particularly when public policy demands finality and repose, notwithstanding the fact that such persons are not parties to this action. See Lefkin v. Venturini, 229 N.J. Super. 1, 550 A.2d 985 (App.Div. 1988); see also Harker v. McKissock, 12 N.J. 310, 315-18, 96 A.2d 660 (1953); Bango v. Ward, 12 N.J. 415, 420, 97 A.2d 147 (1953); Hudson Transit Corp. v. Antonucci, 137 N.J.L. 704, 707, 61 A.2d 180 (E & A 1948); Templeton v. Scudder, 16 N.J. Super. 576, 583, 85 A.2d 292 (App.Div. 1951); Morris Cty. Fair Hous. Council v. Boonton Tp., 197 N.J. Super. 359, 484 A.2d 1302 (Law Div. 1984). We cannot agree.
*499 The cases cited indicate that the virtual representation doctrine traditionally applies (1) in class actions; (2) where a public official, pursuant to a legal duty, represents a community in a case involving a public matter, and (3) where a member of an unincorporated association represents non-party members in an association matter. As thus viewed, however, that doctrine falls short of the circumstances presented in this case.
Martin v. Wilks, 490 U.S. ___, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) reinforces this narrow application of that virtual representation doctrine. In Martin, black individuals and the NAACP filed separate class action complaints against the City of Birmingham, Alabama, and the Jefferson County Personnel Board, alleging that the City and the Board had engaged in racially discriminatory hiring and promotion practices. Prior to judgment, however, the parties entered into two consent decrees that included goals for the hiring and promotion of black firefighters. After much procedural maneuvering, several white firefighters filed a complaint against the City and the Board, alleging racial discrimination and seeking injunctive relief against enforcement of the consent decrees.
The Supreme Court allowed such separate action to proceed:
All agree that "[i]t is a principle of general application in anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to whom he has not been made a party by service of process.' ... This rule is part of our `deep-rooted historic tradition that everyone should have his own day in court.' ... A judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings.[2] [(Emphasis supplied) Martin, 109 S.Ct. at 2184 (footnote included in quote) (citations omitted).]
In footnote 2, the Court went on to say that:
We have recognized an exception to the general rule when, in certain limited circumstances a person, although not a party, has his interests adequately represented by someone with the same interests who is a party ... [citing Hansberry, 311 U.S. at 41-42, 61 S.Ct. at 118.] Additionally, where a special remedial scheme exists expressly foreclosing successive litigation by non-litigants, as for example in bankruptcy or probate, legal proceedings may terminate pre-existing rights if the scheme is otherwise consistent with due process.... [(Emphasis supplied) Martin, 109 S.Ct. at 2184 n. 2.]
*500 In this case, though our Act may qualify as a "special remedial scheme" for liquidation purposes, it does not expressly foreclose future suits by non-parties, and the virtual representation doctrine cannot cure that omission.
We recognize further that the Liquidator legitimately may be charged with a conflict of interest which prevents him from adequately representing the interests of all of the persons he is undertaking to represent. See Phillips Petroleum, 472 U.S. at 811-812, 105 S.Ct. at 2974; Hansberry, 311 U.S. at 42-45, 61 S.Ct. at 118-19; R. 4:32. Indeed, the defendants and amici have specified, at least hypothetically, some of those potential conflicts. For example, the Liquidator may unduly emphasize its desire to protect reinsurers in New Jersey since he also serves as the Commissioner of Insurance. The Liquidator may elect to settle this lawsuit for less than 100% of the obligations owed to the represented persons, effectively depriving them of the opportunity to make different tactical decisions in the action. Moreover, it may be argued that the Liquidator has both an adversarial and a fiduciary position with respect to the claims. Lastly, the "reliance" claim of the Commissioner (who is ex officio, the Liquidator) may be subject to unique defenses with which the represented claimants might not be burdened.
The Liquidator responds that recognition of these alleged conflicts would prevent him from doing precisely what the statute requires  (1) to marshall assets into the estate, (2) to recommend which claims should be allowed and in what amounts, and (3) to distribute the marshalled assets to those with valid claims. See Corcoran v. Frank B. Hall & Co. Inc., 149 A.D.2d 165, 545 N.Y.S.2d 278 (A.D. 1 Dept. 1989). However, the Liquidator's statutory obligation to perform may indeed conflict with the interests of Integrity policyholders, creditors and the like. Therefore, in our view, the best way to afford due process protections to all is to provide such claimants with an opportunity to participate in a class action type proceeding.
*501 Such a resolution also will ensure compliance with the "entire controversy doctrine." See Cogdell v. Hospital Center at Orange, 116 N.J. 7, 560 A.2d 1169 (1989); Crispin v. Volkswagonwerk, A.G., 96 N.J. 336, 476 A.2d 250 (1984). That doctrine's goals are judicial economy, administrative efficiency, fairness to litigants and the just resolution of disputes to the end that one may conclude an entire controversy in a single judicial proceeding embracing all persons who have a recognizable interest in the controversy. Id. at 351-52, 476 A.2d 250. Our party-joinder rule, R. 4:28-1, and class action rule, R. 4:32, reflect the concern for such results.
The party joinder rule provides for joinder of persons "needed for just adjudication" of an action, R. 4:28-1, but such joinder may not be feasible if a party is not subject to service of process. R. 4:28-1(b). This inability to gain adequate service is typical in a class action, and is certainly so in this type of proceeding where persons from all over the country may have an interest in the proceeding. See R. 4:28-1(e). A class action type proceeding is also a practical solution because, as in a class action, this suit involves a "class [which] is so numerous that joinder of all members is impracticable." R. 4:32-1(a)(1). Therefore, application of the concepts of party joinder and class actions to this type of proceeding would be consistent with the notions of preventing "[d]iseconomies and multiplicity," and ensure the "basic fairness" requirement embodied in the entire controversy doctrine. Crispin, 96 N.J. at 353, 476 A.2d 250.
The class action rule applicable to ordinary civil actions, R. 4:32-1(a), sets forth four general prerequisites for commencing a class action in ordinary civil litigation: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.
*502 Literally applying these here, we recognize that potential claimants, such as creditors or policyholders, may not meet the second requirement, arguably because of a lack of commonality of law and fact concerning the "reliance" element. In that regard, Touche asserts that Rosenblum v. Adler, 93 N.J. 324, 461 A.2d 138 (1983), dealing with recovery based on the negligent and fraudulent preparation of financial statements by accountants, stands for the proposition that "individual direct reliance by each plaintiff is a necessary element that must be proven." It relies on Tober v. Charnita, Inc., 58 F.R.D. 74 (Dist.Ct.Pa. 1973):
Although it has been held that individual reliance is no longer considered an essential element of a class action brought pursuant to S.E.C. Rule 10b-5 and the Securities Exchange Act of 1932 ... it cannot be seriously contended that proof of individual reliance is no longer a required element of common law fraud and deceit.
....
Nor are we willing to avoid the problem [of the unmanageability of proving individual actual reliance of each class member] by removing individual reliance as an essential element of common law fraud. To do so, in our opinion, would not only subvert the substantive principles of law involved, but would merely achieve economies of time at the expense of procedural fairness. [Id., at 84-85.]
On the other hand, the Liquidator asserts that the principles enunciated in Bonhiver v. Graff, 311 Minn. 111, 248 N.W.2d 291 (Minn. 1976), should be applied in this case:
[T]he defendants knew that the commissioner was conducting his examination in order to determine whether [the insurance company] was financially stable enough to be allowed to continue to do business in Minnesota. They knew that he was relying upon their work in making that determination.... The duties of the commission ... to examine and monitor insurance companies which operate in this state are meant to provide protection to certain people who deal with these companies. Policyholders, for example, are not going to examine the books of the companies themselves; their `agent' in this matter is the commissioner. Thus, if they are injured because of reliance by the commissioner upon misrepresentations made by the defendants, and defendants are aware of that reliance, defendants' liability arguably should extend to the injured policyholders.... [Id., 248 N.W.2d at 302.]
In Bonhiver the principles were applied in an insurance context while Tober dealt with alleged fraudulent financial information with regard to sports club memberships. Regardless of which *503 specific principles are felt to be generally applicable, the court will be able to find sufficient "questions of law or fact common to the class." See R. 4:32-1(a)(2). Cf. In Re ORFA Securities Litigation, 654 F. Supp. 1449 (D.N.J. 1987).
Of course, some potential claimants in this liquidation proceeding may have suffered greater injuries than others by virtue of their reliance on Integrity's financial wellbeing but such consequent injuries still arise from the same incident. See Troutman v. Cohen, 661 F. Supp. 802 (E.D.Pa. 1987). Thus, because the interests of the Liquidator, as an appropriate representative of such claimants, would be nearly identical to those persons who would comprise the class, he would be able to "fairly and adequately protect the interests of the class," absent a desire to opt out by some of them. R. 4:32-2b.(1).
Based on the foregoing analysis, it is readily seen that a class action type proceeding is both necessary and desirable here in order to achieve the statutory goals in common sense fashion and to satisfy the legitimate concerns of the appellants and amici. Murphy v. Ambassador Insurance Co., 195 N.J. Super. 274, 478 A.2d 1243 (Ch.Div. 1984). Such an approach also will provide due process protections and serve to protect the rights of all claimants, especially those for whom individual litigation might be economically unfeasible. Consequently, some limited modification of the trial court's order governing Clark's limited intervention is also required. Appleman, § 1054, at 85.
Therefore, utilizing R. 4:32-1 et seq. analogously, a supervising court should satisfy itself first, that a class type action is warranted in such a proceeding by consideration of the three elements described in R. 4:32-1(b). Cf. Appleman, § 10654, at 85-88. Specifically, it would appear to be appropriate in situations where, as here, "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [where] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." R. 4:32-1(b)(3). *504 This approach has received approval from commentators as well: "When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." 7A C. Wright & A. Miller, Federal Practice and Procedure, § 778 at 53 (1972). If so satisfied, the court should follow the essential requirements of the class action provisions of R. 4:32.
Without going into all of the details of the procedure to be followed then, where the liquidator undertakes to institute a suit requiring this procedure, at least, he should provide notice to all policyholders, creditors and other interested persons that such litigation has been instituted. Cf. R. 4:32-2(b). Such claimants will have already been notified that they must file their proofs of claim as provided by law. (N.J.S.A. 17:30C-30).
However, the notice should also caution that if they propose to assert any cause of action against any defendants named in the Liquidator's suit which they claim to be "personal" they must describe it in sufficient detail so that the Liquidator may identify it and, if warranted, have the court decide the issue as soon as practicable. Cf. N.J.S.A. 17:30C-20 and 28. As previously pointed out, such a determination may well turn on whether the proceeds of any recovery for such claim will ultimately become a part of the estate to be liquidated, keeping the goals of the Act in mind.
With respect to claims which the Liquidator has a right to maintain on behalf of such claimants, however, if any claimant contends that the Liquidator cannot adequately represent him, as previously discussed, and wants to proceed independently, then the court should allow it, but only for good cause shown. Cf. R. 4:32-2(b)(1); Appleman, § 10654, at 90. Any matter allowed to proceed independently though, should be ordered to be joined with the Liquidator's action, so that the same court may supervise it and no inconsistency in result can arise. *505 Appleman, § 10654, at 90-91. Later on, of course, the court can determine the priority of claims, as guided by the provisions in the Act. E.g. N.J.S.A. 17:30C-26.
In this manner, persons filing claims in response to the initial notice will be subjected to the jurisdiction of the appointing court and, if necessary, there can be an early weeding out of the claims which assertedly do not belong to the Liquidator, etc. Corcoran, supra, 545 N.Y.S.2d 278 (A.D. 1 Dept. 1989). Furthermore, there would be no necessity of attempting to describe the Liquidator's power as "exclusive" or "non-exclusive." Moreover, intervenor applications, like that of Clark, will be rendered inefficacious and any adjudication in the Liquidator's suit will thereafter be binding on those who have been afforded such due process protection and lessen the inclination to "race to judgment" against any defendant. Frank J. Delmont Agency, Inc. v. Graff, 55 F.R.D. 266 (D.Minn. 1972).
We realize that non-signatory states may refuse to be bound by this interpretation; but merely because we are unable to fashion a plan which would be binding on such jurisdictions does not mean that we should abandon the attempt to do what we can.[2]Cf. Ballesteros v. N.J. Prop. Liab. Ins. Guar. Ass'n. 530 F. Supp. 1367 (D.N.J. 1982), aff'd, 696 F.2d 980 (3 Cir.1982).
Finally, Touche urges that the claim brought by the Liquidator on behalf of Integrity is barred because "parties ... who allegedly knew that representations were false could not have justifiably relied on them" and that any knowledge by the individual defendant officers and directors must be imputed to Integrity as a corporation. See John Hancock Mut. Life Ins. Co. v. Cronin, 139 N.J. Eq. 392, 397, 51 A.2d 2 (E. & A. 1947), and Heake v. Atlantic Casualty Ins. Co., 15 N.J. 475, 482, 105 *506 A.2d 526 (1954). In this vein, Touche points out that we regularly impute the knowledge of corporate officers and agents to the corporation, even where the agent is committing a fraud. See Hollingsworth v. Lederer, 125 N.J. Eq. 193, 206, 4 A.2d 291 (E & A 1935). Hercules Powder Co. v. Nieratko, 113 N.J.L. 195, 173 A. 606 (E & A 1938). Therefore, it concludes, based on the allegations in the complaint here, since all of Integrity's officers and directors were part of the fraudulent scheme to misrepresent the corporation's financial condition, Integrity must be regarded as having the knowledge of its agents.
Touche's argument fails for two reasons. First, under Nischne v. Firestone Tire and Rubber Co., 116 N.J. Eq. 305, 173 A. 341 (Ch.Div. 1934), it is clear that "[t]he doctrine of constructive notice to the principal is not available" to one who contributed to the misconduct sought to be imputed. Id. at 307-08, 173 A. 341. Therefore, even though an agent (the directors and officers) of a principal (Integrity) may be responsible for falsity, the third party's (Touche) culpability, if established, would estop it from raising the defense of imputation. "The rule of implied notice is invocable to protect the innocent, never to promote an injustice." Id. at 308, 173 A. 341.
Secondly, all of the cases which Touche cites pre-date our Act and were not concerned with the unique situation here in which a court has such broad powers. See N.J.S.A. 17:30C-4d. See also In Re Investors Funding Corp., Etc., 523 F. Supp. 533 (S.D.N.Y. 1980), where, in a bankruptcy proceeding, the court pointed out:
A corporation is not a biological entity for which it can be presumed that any act which extends its existence is beneficial to it. The complaint plainly alleges that, as a result of the [defendants'] practices, IFC's financial situation was caused to deteriorate even further after 1971. Accepting the allegations of the complaint as true, it is manifest that the prolonged artificial solvency of IFC benefited only the [defendants] and their confederates, not IFC. [Id., at 541.]
In sum, we affirm so much of the trial court's actions as determined the right of the Liquidator to bring this action on behalf of policyholders, creditors and other beneficiaries but as *507 we have limited the same. However, we remand for compliance with the other procedures outlined above and for such further proceedings as may be necessary and consistent with this opinion.
NOTES
[1] See also Babcock v. Chait, No. 85-2441, slip op. (D.N.J. Dec. 8, 1986) (liquidator had standing to sue on behalf of the insurer's policyholders and creditors under Vermont insolvency law); Meyers v. Moody, 693 F.2d 1196 (5th Cir.1982), cert. den., 464 U.S. 920, 104 S.Ct. 287, 78 L.Ed.2d 264 (1983) (receiver of insolvent insurer had standing to sue on behalf of insurer's policyholders, creditors and shareholders under Texas law.)
[2] We also recognize that those states which have not ratified the Uniform Act in one form or other, might well refuse to be bound by interpretations of ratification states and that such a position would implicate constitutional issues of full faith and credit, etc.