729 A.2d 438 (1999)
321 N.J. Super. 399
I/M/O the LIQUIDATION OF INTEGRITY INSURANCE COMPANY.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1998.
Decided May 13, 1999.
*440 Michael E. Goldman, Deputy Attorney General for appellant Commissioner of Banking and Insurance (Peter Verniero, Attorney General, Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, special counsel, attorney; Joseph L. Yanotti, Assistant Attorney General, of counsel; Mr. Goldman, Thalia P. Cosmos, Deputy Attorney General, Steven S. Radin, Thomas S. Novak, and Steven M. Ziokowski on the brief).
David M. Spector of the Illinois bar, admitted pro hac vice, Chicago, IL, for respondent Munich Reinsurance Company (Winne, Banta, Rizzi, Hetherington & Basralian and Hopkins & Sutter, Hackensack, attorneys; Mr. Spector, Dennis G. LaGory, Chicago, IL, and Donald A. Klein, Hackensack, of counsel and on the brief).
Respondent Reinsurance Association of America did not file a brief.
Respondent Certain London Market Reinsurers did not file a brief.
*441 Respondent Clark Equipment did not file a brief.
Respondent Folksamerica Reinsurance Company did not file a brief.
Respondent New Jersey Property-Liability Insurance did not file a brief.
Respondent Allstate Insurance did not file a brief.
Before Judges HAVEY, PAUL G. LEVY and LESEMANN.
*439 The opinion of the court was delivered by PAUL G. LEVY, J.A.D.
On leave granted, the Commissioner of Banking and Insurance appeals from an order requiring her to turn over about 100 intra-agency documents analyzing and evaluating a plan to complete the liquidation of Integrity Insurance Company (Integrity), a property and casualty insurer that has been in liquidation since 1987.[1] The plan submitted to the court takes a novel approach to Integrity's liquidation; instead of paying out claims as they are submitted, it proposes estimating those claims and similarly estimating the liability of the insurers who reinsured the risks underwritten by Integrity. The reinsurers have an estimated liability of $876 million to Integrity's estate. The reinsurers designated the attorneys for respondent Munich Reinsurance Company to act as lead counsel for discovery purposes, and Munich sought the documents in question as part of discovery preceding hearings on the fairness and substance of the plan.
The Commissioner claims that evaluative writings and discussions preceding adoption of the liquidation plan are protected from discovery by the so called "deliberative process" privilege, a qualified privilege protecting intra-agency memoranda on the theory that candid analysis would be hindered if government agencies had to disclose the thought processes that led up to a decision.
The General Equity judge held that the privilege did not apply at all because, when the Commissioner assumes the role of Liquidator, she loses her status as a government agent and becomes the equivalent of a court-appointed trustee or receiver. Alternatively, the judge held that the reinsurers' need for the documents outweighed the Commissioner's interest in non-disclosure. None of the documents in question were reviewed by the judge when the motion was decided.
We reverse and remand, because the Commissioner performs a function required by statute and acts as a government agent when drafting a liquidation or rehabilitation plan. Disclosure of any portions of the documents related to the Commissioner's performance must first be subjected to an in camera review in which the court should weigh the respective interests of the parties and the public interest in determining whether, and to what extent, the documents should be disclosed. We also take this opportunity to explore and explain the nature of the claimed privilegethe so called deliberative process privilege.
I. The Factual Background
Underlying this discovery dispute is a novel plan to wind up the affairs of Integrity, which was placed in liquidation in March 1987. The plan itself, called the Final Dividend Plan (FDP), was summarized *442 by Richard White, the deputy Liquidator appointed by the Commissioner to wind up Integrity's affairs. Integrity was a property and casualty insurer licensed to transact business in all fifty states. The company obtained reinsurance on most of the risks it insured. The insurance and reinsurance covered risks which were not likely to translate into reportable claims until many years after policies were issued, such as environmental and product liability claims. In addition, Integrity wrote excess and umbrella policies, under which there is no duty to pay until underlying coverages have been exhausted. Losses which have already occurred but which have not yet been reported are referred to in the insurance industry as incurred but not reported (IBNR) losses. An actuarial firm retained by the Commissioner estimated that Integrity's ultimate liabilities on its excess and umbrella policies will fall somewhere between $1.6 billion and $3.2 billion. It may take as long as thirty years for all IBNR losses covered by the excess and umbrella policies to be reported and become absolute. The deputy Liquidator estimates that approximately $876 million of the IBNR losses are recoverable from reinsurers.
Ordinarily, liquidation proceedings for insolvent insurers continue until all claims become fixed. As applied to Integrity, this "runoff approach has three significant drawbacks:
First, the run off approach results in substantial delay in paying claimants their ultimate distribution. Second, during the extended period of the liquidation, reinsurers may become insolvent and reinsurance due Integrity may become uncollectible. Finally, the run-off approach results in diminishing the assets available to pay claimants, because the Liquidator must incur administrative expenses in continuing the liquidation.
According to White, if the "Estate were to remain open for an additional 10 years, the present value of the estimated administrative expenses ... would approximate $45 million." That amount increases if the estate remains open for thirty more years.
The FDP was devised and approved by the Commissioner, acting as Liquidator, to avoid these three problems. Briefly summarized, under the FDP, the Liquidator would:
(1) estimate and allow the present value of all Contingent Claims, including claims for IBNR losses; (2) collect from reinsurers the present value of any reinsurance that will be due on such claims; (3) arrive at a final determination of Integrity's assets and liabilities; (4) calculate the percentage to be paid on Fourth Priority [policyholder] claims; and (5) pay a final dividend on all claims accorded Fourth Priority or higher status.
Section 5 of the revised FDP sets forth in detail the manner in which the Liquidator shall compute a reinsurer's liability.
One of the major issues raised by the plan was whether the Commissioner, as Liquidator, had the legal authority to estimate the value of contingent claims, such as IBNR losses. This is, apparently, a novel question. See David H. Anderson & H. Wesley Sunu, Recent Developments in Excess, Surplus Lines and Reinsurance Law, 33 Tort & Ins. L.J. 411, 426 (1998). The General Equity Part has approved this feature of the plan, at least in concept. In re Liquidation of Integrity Ins. Co., 299 N.J.Super. 677, 687, 690-91, 691 A.2d 898 (Ch.Div.1996).
But a second major problem, particularly from the reinsurers' point of view, is whether and to what extent the FDP can abrogate the terms of the reinsurers' contracts. Although Liquidation of Integrity Ins. Co., supra, said that reinsurers will be required to pay once the Liquidator allows a contingent claim, id. at 691, 691 A.2d 898, the opinion did not fully address, and indeed reserved, the questions of "whether a claim is subject to estimation, what the value of the claim is, and other issues that *443 may arise that are not covered in this matter." Id. at 692, 691 A.2d 898.
The Commissioner prepared a "privilege log" listing well over 100 documents with respect to which she asserted either the deliberative process privilege or the attorney-client privilege, and in many cases both. According to the Commissioner, the documents fall into four categories:
1) Correspondence summarizing the issues raised and the discussion of these issues which occurred at the monthly status meeting of the Deputy Liquidator of Integrity and members of his staff and the Director of Financial Solvency and/or members of her staff;
2) Departmental memoranda and other correspondence relative to issues discussed or to be discussed at the monthly status meeting;
3) Departmental memoranda discussing, referencing or suggesting advice of counsel, litigation strategy, and/or potential policy decisions; and
4) A report by American Insurance Management, Inc. a management consulting firm that evaluated the management strategy of the Estate and suggested possible alternatives and improvements.
The judge perceived the "threshold issue" to be whether the deliberative process privilege applies where the Commissioner reaches decisions in her capacity as Liquidator. Relying primarily on out-of-state cases which have drawn a distinction between an insurance commissioner acting as regulator and as liquidator, the judge responded in the negative. He also found, alternatively, that even if the privilege did apply, it could not be asserted here because the evidence was highly relevant, it was unavailable from any other source, the government's role in the litigation was as chief proponent of the plan, and the parties seeking discovery had "an acute interest in the proceedings."
In addition, the Commissioner was ordered to disclose a report prepared by American Insurance Management (AIM), which the judge described as a "strategic evaluation of the management of the Integrity liquidation conducted in 1994, approximately two years before" approval of the FDP.
II. The Deliberative Process Privilege

A
No statute or evidence rule expressly creates a deliberative process privilege. McClain v. College Hosp., 99 N.J. 346, 353, 492 A.2d 991 (1985). Yet it is not disputed that our Supreme Court has recognized that inter-agency or intra-agency memoranda addressing pre-decisional policy matters may not always be discoverable. See Atlantic City Convention Center Auth. v. South Jersey Publishing Co., 135 N.J. 53, 62-63, 637 A.2d 1261 (1994); Loigman v. Kimmelman, 102 N.J. 98, 106-07, 505 A.2d 958 (1986); McClain, supra, 99 N.J. at 360-63, 492 A.2d 991. As explained in McClain:
Another prevalent exclusion from discovery is provided for in inter-agency or intra-agency memoranda. The theory behind this exemption is self-evident. A full and free exchange of discourse would be hampered if the preliminary thought processes of agency members were bared. Again, this exemption has not been regarded as all-exclusive, and saying that the document is an intra-agency memorandum does not make it so.

[99 N.J. at 362, 492 A.2d 991.]
A review of these cases is instructive. In McClain, the Supreme Court held that a report of the State Board of Medical Examiners concerning its investigation of deaths at a hospital was subject to a balancing test to determine whether the documents should be discovered. There must be,
a showing of particularized need that outweighs the public interest in confidentiality *444 of the investigative proceedings, taking into account (1) the extent to which the information may be available from other sources, (2) the degree of harm that the litigant will suffer from its unavailability, and (3) the possible prejudice to the agency's investigation. Id. at 351, 492 A.2d 991.
In Loigman, the plaintiff sought disclosure, under the Right to Know Law, N.J.S.A. 47:1A-1 to -4 and New Jersey's common law public access doctrine, of certain investigatory documents in the possession of the Attorney General. 102 N.J. at 101-02, 505 A.2d 958. The Loigman court, in only four sentences, noted deliberative process as an exception to the analogous federal law, The Freedom of Information Act (5 U.S.C. § 552). Id. at 106, 505 A.2d 958.
In Atlantic City Convention Center Authority, a group of media interests sought to discover tape recordings of a closed executive meeting of the Atlantic City Convention Center Authority. The plaintiffs sought the tapes through both the common law public access doctrine, the Right to Know Law, and the Open Public Meetings Act. N.J.S.A. 10:4-6 to -21. Though finding that neither statutory remedy was available, the Court remanded for a weighing of interests analysis under McClain. 135 N.J. at 60, 637 A.2d 1261.
Common to all of these cases is the fact that the person seeking discovery is either not in litigation with the entity from whom discovery is sought or the res of the litigation is the discovery of the documents themselves. None of the cases deal with the situation where, as here, a party is making a discovery request on the opposition party and that opposition party asserts some privilege to protect the documents from discovery. All, rather, deal with a situation where a private party is seeking government documents either, as in McClain, to aid its litigation against another private party, or, as in Loigman, merely for the purpose of inspecting the documents.
The Court has never held that a government entity may protect otherwise discoverable documents merely because those documents represent an advisory memoranda and McClain makes it clear that no such privilege is intended. "But to the extent that the memorandum reflects the deliberative process of the agency, a greater showing of need should be demonstrated by the applicant than a mere interest in the proceedings. McClain, supra, 99 N.J. at 361, 492 A.2d 991 (emphasis added).
New Jersey has a strong, expressed public policy in maintaining an open government. McClain, supra, 99 N.J. at 355, 492 A.2d 991. This policy is so strong that citizens of this State have a common-law right to inspect government records even where their interests are "slight." Irval Realty v. Bd. of Pub. Util. Commissioners, 61 N.J. 366, 372, 294 A.2d 425 (1972).
New Jersey's strong interest in an open government is balanced against the fear that agency employees might be inhibited in performing their duties if their work product might some day find its way into an opponent's hands during litigation against the agency. This possibility, in the abstract, was considered and rejected in Payton v. New Jersey Turnpike Authority, 148 N.J. 524, 691 A.2d 321 (1997). There, an employee was suing the Turnpike Authority ("NJTA") for failure adequately to address her sexual complaint. She sought, as part of her discovery, certain internal memoranda relating to the NJTA's investigation of her claim. The NJTA asserted a privilege of self-critical analysis. This privilege, also discussed in McClain and Loigman, is based on concerns similar to those upon which the so-called deliberative process privilege is based, namely protecting the openness of discussions and investigations. The Payton Court considered and rejected the privilege as neither necessary to the furtherance of open discussion, *445 nor as a matter which could not be handled by balancing that need against New Jersey's interest in open government and a plaintiff's interest in otherwise discoverable documents. "[W]hen a deliberating body is required by law to prepare an honest report, replete with self-evaluation, we do not assume that that body will shirk its responsibilities in order to hide the truth." Payton, 148 N.J. at 547, 691 A.2d 321.
New Jersey has always resisted the formation of new, categorical privileges. Dixon v. Rutgers, The State University of New Jersey, 110 N.J. 432, 446, 541 A.2d 1046 (1988). The Payton Court, though recognizing a legitimate concern of keeping investigative, reports confidential, refused to create a blanket privilege for either investigative reports or for self-critical analysis. 148 N.J. at 542, 691 A.2d 321. Likewise, whenever the issue has arisen, the Court has refused to create a blanket privilege protecting deliberative materials.
New Jersey's Rules of Evidence provide a mechanism for preventing disclosure of sensitive government documents. N.J.S.A. 2A:84A-27 provides that "[n]o person shall disclose official information of this State or of the United States ... (b) if the judge finds that disclosure of the information in the action will be harmful to the interests of the public." N.J.R.E. 515. The analysis under N.J.R.E. 515 is a balancing test where the court must consider "(1) the extent to which the information may be available from other sources, (2) the degree of harm that the litigant will suffer from its unavailability, and (3) the possible prejudice to the [government entity's legitimate purpose]." McClain, supra, 99 N.J. at 351, 492 A.2d 991; see also, Payton v. New Jersey Turnpike Authority, supra, 148 N.J. at 548, 691 A.2d 321 (court should balance private need against public interest in confidentiality); Atlantic City Convention Center, supra, 135 N.J. at 60, 637 A.2d 1261 (similar balancing test applied in permitting access to government records); Loigman, supra, 102 N.J. at 107-08, 505 A.2d 958 (need for confidentiality of attorney general's investigation of prosecutor's office balanced against public interest in disclosure).

B
The parties disagree as to their respective burdens of proof. The Commissioner argues that her claim of privilege and the need for confidentiality are "entitled to significant weight" and that respondent must show a particularized need for the information which is "compelling." The reinsurers argue that the Commissioner shoulders the burden, correctly citing Coastal States Gas Corp. v. Dept. of Energy, 617 F.2d 854, 868 (D.C.Cir.1980), for the proposition that "the agency has the burden of establishing what deliberative process is involved, and the role played by the documents in issue in the course of that process." The party asserting a privilege normally bears the burden of proving its applicability.
The Commissioner's reliance on McClain, supra, for the proposition that respondent must demonstrate a "compelling need" is misplaced. The Court used that language in the context of an investigatory report by an agency which was not a party to the underlying proceeding. 99 N.J. at 362-63, 492 A.2d 991. The party seeking discovery had to show a compelling need because, in that case, the agency had demonstrated a strong public interest in maintaining the confidentiality of its investigative proceedings. On remand, the burden of proof will lie with the Commissioner to establish that "the disclosure of the information in the action will be harmful to the interests of the public." N.J.R.E. 515.

C
The Commissioner contends that the court erred in holding that the deliberative process privilege does not apply to the documents sought by the reinsurers because, in devising a liquidation plan, the *446 Commissioner does not act as an agent of government. Moreover, she is entrusted by statute with devising a liquidation plan that must consider the public interest, as well as the private interests of Integrity's creditors and policyholders. The reinsurers counter that, as Liquidator, the Commissioner performs the functions of a receiver for a private company, a function distinct from the Commissioner's usual role as the regulator of insurance companies.
The respective roles of Commissioner and the court are delineated by N.J.S.A. 17:30C-1 to -31, also referred to as the Uniform Insurers Liquidation Act (UILA).[2] The Superior Court has exclusive jurisdiction over delinquency proceedings for property and casualty insurers, with a delinquency proceeding being the sole and exclusive method of liquidating, rehabilitating, reorganizing or conserving an insurer. N.J.S.A. 17:30C-2 and -3. Only the Commissioner may institute such proceedings, N.J.S.A. 17:30C-3, and it is the Commissioner in the first instance who decides whether to attempt rehabilitation or proceed with liquidation. N.J.S.A. 17:30C-6 and 8. Should the insurer require a receiver, only the Commissioner may serve in that role. N.J.S.A. 17:30C-15(a). The Commissioner may appoint a Deputy Commissioner to assist in the delinquency proceeding. N.J.S.A. 17:30C-17. In a liquidation proceeding, the Commissioner must take possession of and title to the insurer's property. N.J.S.A. 17:30C-9(a) and -15.
The court plays a supervisory role in delinquency proceedings. While the Commissioner commences delinquency proceedings, it is for the court to "either deny the application or grant the application together with such other relief as the nature of the case and the interest of the policyholders, creditors, stockholders, members, subscribers or the public may require." N.J.S.A. 17:30C-4(d). The court may enjoin conduct that interferes with the Commissioner's operation of the insurer or might result in waste of assets. N.J.S.A. 17:30C-5. In rehabilitation proceedings, the Commissioner takes possession of the insurer's property, conducts its business, and takes "such steps toward removal of the causes and conditions which have made rehabilitation necessary, as the court may direct." N.J.S.A. 17:30C-7(a). Upon taking possession of the assets of the insurer, the receiver may liquidate, rehabilitate, reorganize or conserve, subject to the direction of the court. N.J.S.A. 17:30C-15(e).
We conclude that the Commissioner performs a governmental function, at least in drafting a liquidation plan for the court's approval. This is a function that only the Commissioner can perform, and is a statutory duty to be carried out in furthering the public interest. "It is now well settled that the insurance business affects the public interest and is therefore subject to reasonable regulation, including liquidation proceedings of an insolvent carrier." In re Liquidation of Integrity Insurance Co., 240 N.J.Super. 480, 490, 573 A.2d 928 (App.Div.1990). "Any interpretation of both our Act and the Uniform Act must be influenced by the provisions which mandate that the broadest protection be afforded to the public and the various claimants and beneficiaries." Id. at 491, 573 A.2d 928. The reinsurers mistakenly rely on an unpublished decision[3] concerning the Life and Health Insurers Rehabilitation and Liquidation Act (RLA), N.J.S.A. 17B:32-31 to -91. That legislation neither provides nor intends that the Commissioner as Liquidator advances merely private interests. The unpublished opinion merely sets forth the standard of review of the Commissioner's plan by the Chancery Division, that being whether it is fair and *447 equitable. In rejecting the Commissioner's argument that the court should look to whether there is substantial evidence in the record to support the plan, giving deference to the administrative expertise of the Commissioner, the unpublished opinion does not indicate in anyway that the Commissioner was not acting in a governmental capacity.
We are not persuaded by out-of-state authority relied on by the parties, which we find only marginally relevant and, in any event, far from unanimous in their holdings. The authority cited by the reinsurers merely supports the proposition that in executing a plan, an insurance commissioner as a receiver acts in a private capacity. However, in devising a plan, a department of insurance performs a public or governmental function assigned to it by the Legislature. To the extent that the intra-agency memoranda sought by respondent contains matters of opinion or evaluation of competing alternatives, there may be reasons to maintain their confidentiality. McClain, supra, 99 N.J. at 363, 492 A.2d 991.
The reinsurers offer an alternative rationale, never addressed below, for sustaining the order under review. They argue that the government cannot invoke the privilege when it initiates the litigation. The premise of that argument, however, is questionable because the Commissioner and the reinsurers are not adverse parties at this point. Additionally, that argument was based on the assumption that New Jersey recognizes a common law qualified privilege of deliberative process, similar to the Federal privilege. Since we hold that no such qualified privilege exists and that on remand the claim of privilege should be analyzed under N.J.R.E. 515, this argument lacks merit. Furthermore, it appears that no hearing has been held on the fairness or workability of the plan. The Commissioner has not yet instituted suit against the reinsurers to recover on their contracts with Integrity. The plan has not yet been approved. As far as we know, at this point the parties are merely following the procedures established by the liquidation court for court approval of a final plan. In re Liquidation of Integrity Ins. Co., supra, 299 N.J.Super. at 679, 691 A.2d 898. The court has ultimate responsibility for approving the liquidation plan and it should view the documents to determine whether the Commissioner has arrived at a practical and workable solution.
In any event, there is no blanket rule that the government loses privileges simply by becoming a litigant. The rule in New Jersey is that a "party may not abuse a privilege ... by asserting a claim or defense and then refusing to provide the information underlying that claim or defense based on the privilege." Payton, supra, 148 N.J. at 553, 691 A.2d 321. For example, in Payton, the government authority could not defend a sexual harassment claim by asserting an investigation defense without also disclosing the documents underlying the investigation. Id. at 554, 691 A.2d 321. However, cautioned the Court, "the trial court should conduct an in camera review of the materials at issue to determine if the privilege applies to specific documents, and, if so, whether those documents are so tenuously related to the affirmative defense that waiver is overcome despite the assertion of that defense." Ibid.
Finally, respondent claims that eighteen documents generated after February 1996, when the Commissioner approved the FDP, are clearly discoverable. Applying N.J.R.E. 515, whether a document was preor postdecisional would be a factor considered when balancing the interests, but the mere fact that the document was postdecisional would not automatically mean that it would be in the public interest to disclose it.
III. Relevance of the Documents
Another, perhaps stronger, reason for not disclosing particular documents is that they may not be relevant. In holding that appellant should disclose the documents even assuming they were subject to the privilege, the judge applied the test in *448 F.T.C. v. Warner Communications, supra, 742 F.2d at 1161, which considers such factors as relevance, availability from other sources, the government's role in the litigation, and the extent to which disclosure would hinder frank and independent discussion of the relevant policies and decisions. But delinquency proceedings are different than ordinary civil litigation, as we recognized during the early stages of this litigation. In re Liquidation of Integrity Ins. Co., supra, 240 N.J.Super. at 497, 573 A.2d 928 (citation omitted). As noted earlier by Judge Meehan:
The statutory function of the Commissioner and/or the deputy liquidator is to weigh all the interests and to perform an efficient and fair liquidation of Integrity. The commissioner and deputy liquidator are subject to a fiduciary obligation to all policyholders and creditors of Integrity and to the supervision of the court pursuant to N.J.S.A. 17:30C-2.
[In re Liquidation of Integrity Ins. Co., supra, 231 N.J.Super. at 157, 555 A.2d 50.]
Thus, the supervising court is statutorily empowered to exercise its discretion in order to protect the interests of policyholders, creditors and the public generally. In re Liquidation of Integrity Ins. Co., 240 N.J.Super. at 491, 573 A.2d 928. In liquidating companies, "the effort of courts must be in the direction of a fair and practical solution of the difficulties presented." 19A John A. Appleman & Jean Appleman, Insurance Law & Practice § 10654, at 85 (1982).
Other jurisdictions differ in characterizing the nature of the relationship. Some say that a liquidator is akin to a court-appointed private trustee, like an agent of the court. Kentucky Central Life Ins. Co. v. Park Broadcasting, 913 S.W.2d 330, 335 (Ky.App.1996); In re Liquidation of Ideal Mut. Ins. Co., 140 A.D.2d 62, 532 N.Y.S.2d 371, 374 (1988); Consolidated Edison Co. v. Ins. Dept., 140 Misc.2d 969, 532 N.Y.S.2d 186, 190 (N.Y.Sup.Ct.1988). Others hold that a commissioner as receiver performs a statutory function different from that of the court, and is not an agent of the court. El Paso Elec. Co. v. Texas Dept. of Ins., 937 S.W.2d 432, 438 (Tex.1996); Kueckelhan v. Federal Old Line Ins. Co., 69 Wash.2d 392, 418 P.2d 443, 453 (1966). But even these jurisdictions do not discount the importance of the court's oversight. See Garamendi v. Executive Life Ins. Co., 17 Cal.App. 4th 504, 21 Calr. 2d 578 (1993). Clearly, the court in a rehabilitation or liquidation proceeding occupies a different role than its customary function as neutral arbiter between competing claimants.
Since the statutory scheme contemplates the Commissioner and the supervising court united in the common goal of creating a fair and workable plan, at the very least the supervising court ought to have the benefit of the Commissioner's expertise on what appears to be a novel approach to the liquidation of a property and casualty insurer. Ordinarily, in camera review is desirable to determine whether a privilege applies to a specific document, and whether a party's need for the document outweighs the government's interest in confidentiality. Payton, supra, 148 N.J. at 550, 554, 691 A.2d 321; Loigman, supra, 102 N.J. at 112-13, 505 A.2d 958. This is clearly not a case where the documents contain state secrets or highly confidential information where disclosure, even to the court, presents a risk to the public safety or public interest. Id. at 108-11, 505 A.2d 958. See also McCormick on Evidence § 110 at 406 (Strong ed. 4th ed. 1992) ("Once we leave the restricted area of military and diplomatic secrets, however, a greater role for the judiciary in the determination of governmental claims of privilege becomes not only desirable but necessary"). Respondent's argument that appellant is estopped from seeking in camera review because it opposed that relief below is without merit; appellant did not want to disclose the documents at all and, having lost on that issue, is not now being inconsistent in preferring in camera review to wholesale disclosure. Moreover, given the public interest at stake, we certainly would have considered the in camera *449 procedure, even if appellant had opposed it.
The dispute between the parties as to the workings of the plan and the content of the documents underscores the need for a judicial examination. The reinsurers claim that the plan divides policyholders into two groups, most of whom will be denied all rights to any future recovery, and that similarly situated policyholders will be "subject to widely disparate asset allocations" resulting in a plan that "operates like a game of chance." They contend that the plan calls for abrogating certain terms of the reinsurer's contracts with Integrity. They want to know whether the Commissioner's "real purpose" in the FDP was to coerce the reinsurers into unfavorable settlements, why she thought it was in the public interest to abrogate the terms of the reinsurers' contracts, why she did not seek a legislative solution rather than attempting to justify the plan under the existing Act, whether she "believes" that the plan is workable, whether she thought it was consistent with sound public policy to grant certain policyholders preference over others, and whether the result of the plan might be to force some reinsurers into insolvency. The Commissioner disputes the reinsurers' factual assumptions, and that factual dispute cannot be resolved on this appeal.
If the trial court was correct in assuming the documents "pertain to the fairness and feasibility of the FDP" then they should be disclosed. But to the extent they merely address questions of motive and purpose, they should not be disclosed, first because that question is not relevant to whether the plan itself is fair and practical, and second because the Commissioner has already made clear the reasons for taking a novel approach to Integrity's liquidation.
We conclude that this issue should be remanded for in camera review of the documents. Therefore, we reverse the order of the supervising court insofar as it held that the Commissioner, as Liquidator, could not assert the privilege in the context of drafting a liquidation plan. After the court reviews the documents in camera, it shall reconsider whether any are discoverable, consistent with the guidance expressed in this opinion. We do not retain jurisdiction.
NOTES
[1] Integrity was voluntarily placed in rehabilitation on December 30, 1986, and placed in liquidation on March 24, 1987. See In re Liquidation of Integrity Ins. Co., 231 N.J.Super. 152, 155, 555 A.2d 50 (Ch.Div.1988). The current appeal arises out of a February 20, 1998, motion by the Commissioner for a protective order to bar production of a lengthy list of documents and to quash subpoenas for the depositions of former Insurance Commissioners Randall and Karpinski, and respondents' cross-motion, filed on March 20, for an order compelling those depositions and for a ruling that the deliberative process privilege does not apply to communications by and among the Commissioner and staff, assistants, deputies and employees.
[2] Note that not all of the Act is part of the Uniform Act. See In re Liquidation of Sussex Mut. Ins. Co., 301 N.J.Super. 595, 598 n. 1, 694 A.2d 312 (App.Div.1997).
[3] In re Rehabilitation of Mutual Benefit Life Ins. Co., Docket No. C-91-00109 (1993).